HIF BIO, INC. and BizBiotech Co., Ltd., Plaintiffs–Appellees,

v.

YUNG SHIN PHARMACEUTICALS INDUSTRIAL CO., LTD. (doing business as Yung Shin Pharmaceuticals and Yung Shin Pharm. Ind. Co. Ltd.), Yung Zip Chemical Co., Ltd., Fang–Yu Lee, and Che–Ming Teng, Defendants,

and

Carlsbad Technology, Inc., Defendant–Appellant,

and

Fish and Richardson P.C., and Y. Rocky Tsao, Defendants.

No. 2006–1522.

United States Court of Appeals, Federal Circuit.

Nov. 13, 2007.

Rehearing and Rehearing En Banc Denied Feb. 8, 2008.

Bub–Joo S. Lee, Lee Anav Chung, LLP, of Los Angeles, CA, argued for plaintiffs-appellees.

Glenn W. Rhodes, Howrey LLP, of San Francisco, CA, argued for defendant-appellant. With him on the brief were Julie S. Gabler, Stephanie M. Byerly, and Jesse D. Mulholland, of Los Angeles, CA.

Before MICHEL, Chief Judge, GAJARSA, Circuit Judge, and HOLDERMAN, Chief District Judge.[*]

GAJARSA, Circuit Judge.

Defendant Carlsbad Technology, Inc. ("CTI") appeals from the decision of the United States District Court for the Central District of California remanding the case to state court. *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.* ("Order"), No. 05–07976 (C.D.Cal. Jun. 9, 2006). The remand order was entered in response to a motion to dismiss brought by Defendant CTI. *Id.* at 5. Because we lack jurisdiction to review this appeal, we dismiss.

## I.

### A.

The plaintiffs alleged the following facts, which we accept as true for purposes of this appeal, in their first amended complaint ("FAC").

In 1999, Jong–Wan Park ("Park") and Yang–Sook Chun ("Chun"), two researchers affiliated with a Korean university, began to investigate the effect of the chemical compound YC–1 on a protein complex known as HIF–1. A component of HIF–1 is expressed in human tumors, and Park

---

[*] Honorable James F. Holderman, Chief District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

and Chun hypothesized that YC–1 could be used to inhibit the activity of HIF–1, "which would have the effect of suppressing *angiogenesis*, that is, the growth of blood vessels into animal tumors, and thereby kill the tumor by starving it of oxygen and nutrients." FAC ¶¶ 19–21.

Between 1999 and 2002, Park and Chun "conducted a series of laboratory experiments that confirmed that YC–1 in fact inhibits HIF–1 activity *in vitro,* that is, in test tube experiments" and "*in vivo,* that is, in live laboratory animals." *Id.* ¶¶ 22, 24. Park and Chun "filed a Korean patent application disclosing their INVENTION, including the novel anti-angiogenic, anti-cancer application of YC–1" and submitted the results of their experiments in papers to two academic journals, which subsequently accepted and published the papers. *Id.* ¶¶ 22–26.

During this time period, Park contacted and exchanged several emails with Defendant Che–Ming Teng ("Teng"). Park contacted Defendant Teng because of his "prior role in the synthesis and development of YC–1, his general familiarity with the compound, and his relationship with" Defendant Yung Shin Pharmaceuticals Industrial Co., Ltd. ("Yung Shin"), "a major supplier of YC–1." *Id.* ¶ 32. Defendant Teng supplied Park with four batches of YC–1 to be used in the experiments. Park disclosed the results of his study and sent to Defendant Teng a draft manuscript of the *in vitro* paper and the not-yet-public experimental data from the *in vivo* experiments. Park also suggested that Defendant Teng and Defendant Fang–Yu–Lee ("Lee"), the President of Defendant Yung Shin, could be co-authors of the *in vitro* paper. *Id.* ¶¶ 32–39. Unknown to Park and Chun, Defendants Y. Rocky Tsao and Fish & Richardson P.C. (collectively "Patent Attorneys") filed U.S. patent applications "covering the novel anti-angiogenic,

anti-cancer properties of YC–1" and naming Defendants Lee and Teng as the inventors. *Id.* ¶¶ 56–62. In March 2003, Defendant Yung Shin filed a PCT application claiming priority to the U.S. provisional application. *Id.* ¶ 86.

In July 2003, Park and Chun assigned all of their rights relating to YC–1 to Plaintiff BizBiotech. Plaintiff BizBiotech attempted to negotiate a joint venture with Defendants Teng, Lee, and Yung Shin; during the negotiations, Plaintiff BizBiotech "disclosed its patent protection strategy" and "business plans." *Id.* ¶ 63–71. The defendants involved in the negotiations did not reveal their own patent applications to the plaintiffs. *Id.* ¶¶ 28, 63–71. In February 2005, Plaintiff BizBiotech assigned all of its rights with respect to YC–1 to Plaintiff HIF Bio, Inc. ("HIF").

Plaintiffs BizBiotech and HIF assert that they hold all rights "with respect to the INVENTION and application of YC–1 as an anti-cancer, anti-angiogenesis agent," including several U.S. patent applications filed between April 2003 and June 2004 naming Park and Chun as the inventors. *Id.* ¶¶ 29–30, 86, 89. The plaintiffs also assert that Defendant CTI agreed to work with Defendants Yung Shin, Lee, and Teng "to further develop, commercialize, sell and market YC–1 and its analogues as anti-angiogenic, anti-cancer drugs in the United States and abroad." *Id.* ¶ 82.

B.

In September 2005, Plaintiffs HIF and BizBiotech filed a complaint against Defendants Yung Shin, Yung Zip Chem. Co., Ltd. ("Yung Zip"), Lee, Teng, CTI, and Patent Attorneys in Los Angeles Superior Court. In November 2005, Defendant CTI removed the action to the United States District Court for the Central District of California. In March 2006, the

plaintiffs filed their first amended complaint, asserting twelve causes of action.

The first and second causes of action seek a declaratory judgment for ownership and inventorship, respectively, of "the INVENTION." FAC ¶¶ 104–110. The third cause of action asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. FAC ¶¶ 112–71. The remaining nine causes of action are based respectively on slander of title, *id.* ¶¶ 172–75; conversion, *id.* ¶¶ 176–80; actual and constructive fraud, *id.* ¶¶ 181–84; intentional interference with contractual relations and prospective economic advantage, *id.* ¶¶ 185–89; negligent interference with contractual relations and prospective economic advantage, *id.* ¶¶ 190–96; breach of implied contract, *id.* ¶¶ 197–203; unfair competition and fraudulent business practices, *id.* ¶¶ 204–09; unjust enrichment-constructive trust, *id.* ¶¶ 210–14; and permanent injunction, *id.* ¶¶ 215–19.

The defendants filed various motions to dismiss and to strike. Of pertinence here, Defendant CTI moved to dismiss the plaintiffs' first amended complaint based on Federal Rule of Civil Procedure 12(b)(1) and (6). The district court dismissed the RICO claim finding that the plaintiffs "have not adequately alleged a pattern of racketeering." Order, slip op. at 11–12. In addition, the district court declined supplemental jurisdiction over the rights of inventorship and ownership of inventions claims, which it found were state law claims, and also declined supplemental jurisdiction over the plaintiffs' nine other state claims. *Id.* at 7–9, 12. Having declined supplemental jurisdiction over the state claims, the district court remanded the case to state court. *Id.*

Defendant CTI filed a timely notice of appeal with this court.[1]

## II.

■ We have stated that "[w]hether this court has jurisdiction over an appeal taken from a district court judgment is a question of law which we address in the first instance." *Thompson v. Microsoft Corp.*, 471 F.3d 1288, 1291 (Fed.Cir.2006) (quoting *Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1292 (Fed.Cir.2005)). Whether the district court possessed jurisdiction is also a question of law that this court reviews without deference. *Dehne v. United States*, 970 F.2d 890, 892 (Fed.Cir. 1992) ("This Court ... reviews jurisdiction, a question of law, de novo.") (citation omitted); *see Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) ("[Q]uestion[s] of law ... must be resolved de novo on appeal."); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1335 (Fed.Cir.2007) (§ 2201 declaratory judgment action); *Voda v. Cordis Corp.*, 476 F.3d 887, 892 (Fed.Cir.2007) (§ 1367 supplemental jurisdiction); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (§ 1331 federal question jurisdiction in removal context).

■ Title 28 U.S.C. § 1367 "reaffirms that the exercise of supplemental jurisdiction is within the discretion of the district court." *Mars, Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1374 (Fed. Cir.1994); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (stating that supplemental jurisdiction statute codifies the principle "that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's

---

1. Defendant Patent Attorneys filed a separate notice of appeal with the Ninth Circuit. That appeal is still pending. *See HIF Bio, Inc. v. Fish & Richardson*, No. 06–55972.

right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). A district court's discretion, however, is not unfettered and is subject to review for an abuse of discretion. *Voda*, 476 F.3d at 897–98.

### III.

### A.

Defendant CTI asserts on appeal that the district court's remand order was improper because the plaintiffs' remanded claims raise a substantial question of federal patent law—inventorship. The plaintiffs assert that the district court's remand order was proper because their claims are based solely on state law and do not arise under the federal patent laws. We dispose of this appeal, however, on a threshold issue—whether this court has appellate jurisdiction to review the district court's remand order.

The Supreme Court has stated that "every federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (citation and internal quotation marks omitted); *see, e.g., SafeTCare Mfg., Inc. v. Tele–Made, Inc.*, 497 F.3d 1262, 1266 (Fed.Cir.2007); *Smith v. Nicholson*, 451 F.3d 1344, 1347 (Fed.Cir.2006). Here, because Defendant CTI appeals from a remand order, we must determine whether 28 U.S.C. § 1447(d) bars this court's appellate jurisdiction. *Powerex Corp. v. Reliant Energy Servs., Inc.*, — U.S. —, 127 S.Ct. 2411, 2415, 168 L.Ed.2d 112 (2007) ("The authority of appellate courts to review district-court orders remanding re-moved cases to state court is substantially limited by [§ 1447(d) ]."). For the following reasons, we find that 28 U.S.C. § 1447(d) bars this court's review of the remand order.

### B.

Title 28 U.S.C. § 1447(d) provides (with an exception for civil rights cases removed from state court pursuant to § 1443) that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." While the language of this statute on its face appears to preclude review, the Supreme Court has "interpreted § 1447(d) to cover less than its words alone suggest." *Powerex*, 127 S.Ct. at 2415.

In the seminal case of *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court held that appellate courts are not barred by § 1447(d) from reviewing a district court's remand order based on an overloaded docket. 423 U.S. at 351, 96 S.Ct. 584. The Court reasoned that the jurisdictional bar of § 1447(d) should be read *in pari materia* with, and thus limited to, the grounds enumerated in § 1447(c), which at the time authorized remands only for cases "removed improvidently and without jurisdiction." *Id.* at 345–46, 96 S.Ct. 584.

Since *Thermtron*, Congress has amended the language of § 1447(c) twice—once in 1988 and again in 1996. In addition, the Supreme Court has issued several § 1447(d) decisions. *See Powerex Corp. v. Reliant Energy Servs., Inc.*, — U.S. —, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007); *Osborn v. Haley*, — U.S. —, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996);

*Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Gravitt v. Sw. Bell Tel. Co.,* 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). In these decisions, the Court repeatedly reaffirmed *Thermtron*'s holding that the jurisdictional bar against reviewing remand orders is limited by § 1447(c). *See Osborn,* 127 S.Ct. at 893; *Kircher,* 126 S.Ct. at 2153–54; *Things Remembered,* 516 U.S. at 127–28, 116 S.Ct. 494. Section 1447(d) thus remains limited by § 1447(c).

■ Section 1447(c) provides:

A motion to remand the case on the basis of *any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks *subject matter jurisdiction,* the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

(emphases added). The language of § 1447(c) thus indicates that § 1447(d) bars review of remand orders based either on a lack of subject matter jurisdiction or on "any defect other than a lack of subject matter jurisdiction." *Quackenbush,* 517 U.S. at 712, 116 S.Ct. 1712.

■ In this case, the district court's remand order is based on declining supplemental jurisdiction. The district court held that "the inventorship and ownership of inventions are valid state law claims," over which it lacked original (i.e. federal question or diversity) jurisdiction. *Order,* slip op. at 8–9. Despite holding that it lacked an independent basis of subject matter jurisdiction over the inventorship and ownership claims (Counts 1 and 2), the district court did have federal question jurisdiction over the plaintiffs' alleged RICO claim. The alleged federal RICO claim was the basis for the district court's § 1367(a) supplemental jurisdiction over the inventorship and ownership claims, as well as the remaining nine state claims (Counts 4–12).[2] Pursuant to § 1367(c), the district court "decline[d] to exercise supplemental jurisdiction over the state claims in the FAC" because the "preponderance of state law issues means that a state court is the proper venue to try the state law claims." *Order,* slip op. at 7. The district court thus remanded all of the non-RICO causes of action (Counts 1, 2, and 4–12) based on declining supplemental jurisdiction.

■ If the district court had not had supplemental jurisdiction over the state claims, the remand would have been based on a lack of federal question or diversity jurisdiction. In such case, deciding whether § 1447(d) bars review would be straightforward. A remand for lack of federal question or diversity jurisdiction is clearly a remand for lack of subject matter jurisdiction under § 1447(c) and thus barred from appellate review by 1447(d). *See Powerex,* 127 S.Ct. at 2418 ("We hold

---

**2.** The federal RICO claim provided the basis for this supplemental jurisdiction even though the RICO claim was dismissed for failure to state a claim. *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims.").

that when, as here, the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d).").  However, in this case, because the remand order was based on declining supplemental jurisdiction pursuant to § 1367(c), we are faced with an issue of first impression for this court: whether a remand based on declining supplemental jurisdiction under § 1367(c) is within the class of remands described in § 1447(c), and thus barred from appellate review by § 1447(d).

Although we have not yet addressed this issue, several other Courts of Appeals, relying on the Supreme Court's decision in *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), have held that review of a remand order based on declining supplemental jurisdiction is not barred by § 1447(d). *See, e.g., Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 223–24 (3d Cir.1995) (citing precedents in the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits); 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3740 n. 39 (3d ed.1998).

In *Cohill*, the Supreme Court held that district courts have discretion to remand "a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." 484 U.S. at 357, 108 S.Ct. 614. The Court reasoned that (1) the animating principle underlying the flexible doctrine of pendent jurisdiction in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), supports giving district courts discretion not only to dismiss but also to remand; and (2) the removal statute does "not address specifically *any* aspect of a district court's power to dispose of pendent state-law claims after removal." *Cohill*, 484 U.S. at 348–55,

108 S.Ct. 614. In doing so, the Court stated in a footnote that "[Section] 1447(c), as the dissent recognizes, do[es] not apply to cases over which a federal court has pendent jurisdiction. Thus, the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all." 484 U.S. at 355 n. 11, 108 S.Ct. 614. Other Courts of Appeals have cited this footnote for the proposition that a remand order based on declining supplemental jurisdiction is not within the class of remands described in § 1447(c) and thus not subject to the jurisdictional bar of § 1447(d). *See, e.g., McCandless*, 50 F.3d at 223–24.

Despite the trend among appellate courts relying on *Cohill* for the proposition that § 1447(d) does not bar review of § 1367(c) remands, Justice Kennedy's concurrence in *Things Remembered* introduced a degree of uncertainty as to whether such reliance was well placed. In particular, Justice Kennedy's concurring opinion, joined by Justice Ginsburg, stated that although the Court held in *Cohill* that "a district court may remand to state court a case in which ... only pendent state-law claims remained," the Court "did not find it necessary to decide whether [§ 1447](d) would bar review of a remand on these grounds." 516 U.S. at 130, 116 S.Ct. 494 (Kennedy, J., concurring). Justice Kennedy's concurrence acknowledged that "various Courts of Appeals have relied on *Thermtron* to hold that § 1447(d) bars appellate review of § 1447(c) remands but not remands ordered under *Cohill*," but stated that the "issues raised by those decisions are not before us." 516 U.S. at 130, 116 S.Ct. 494. We have found no decision that grapples with Justice Kennedy's *Things Remembered* concurrence, and the Courts of Appeals have appeared to continue to hold that remand

orders based on § 1367(c) are reviewable on appeal, regardless of § 1447(d).

The Supreme Court's recent *Powerex* decision, however, made the uncertainty introduced by Justice Kennedy's *Things Remembered* concurrence precedential. In *Powerex*, the Court stated that "[i]t is far from clear ... that when discretionary supplemental jurisdiction is declined the remand is not based on lack of subject-matter jurisdiction for purposes of § 1447(c) and § 1447(d)." 127 S.Ct. at 2418–19. Citing Justice Kennedy's *Things Remembered* concurrence and drawing attention to the statutory amendments, the Court also noted that the question was still open, stating: "[w]e have never passed on whether *Cohill* remands are subject matter jurisdictional for purposes of post–1988 versions of § 1447(c) and § 1447(d)." *Id.* at 2419 n. 4.[3]

By thus undercutting the persuasive force of the decisions of the other Courts of Appeals relying on *Cohill*, *Powerex* appears to reopen the question of whether § 1367(c) remands are barred from review under §§ 1447(c) and (d). Moreover, *Powerex* states that a remand order need only be colorably characterized as a remand based on lack of subject matter jurisdiction to be beyond the reach of appellate courts under § 1447(d). 127 S.Ct. at 2418. It is with this new perspective on the jurisdictional bar of § 1447(d) that we now turn to the question of our jurisdiction to review the present appeal.

■ Here, Defendant CTI cites the Supreme Court's *Quackenbush* decision to support its argument that § 1447(d) permits our appellate review of § 1367(c) remands.[4] In *Quackenbush*, the Court held that § 1447(d) interposes no bar to appellate review of abstention-based remand orders. 517 U.S. at 711–12, 116 S.Ct. 1712. CTI argues by analogy that § 1447(d) imposes no bar to review of discretionary remands under § 1367(c). It is true that the considerations that underlie abstention may in some cases be similar to those enumerated for declining supplemental jurisdiction under § 1367, and both are discretionary doctrines that allow a district court to decline jurisdiction. However, Defendant CTI's analogy overlooks a fundamental difference between remands based on abstention and remands based on declining supplemental jurisdiction. This difference compels a different result when

---

**3.** Indeed, under the pre–1988 version of § 1447(c), which required remands only where the case was "removed improvidently and without jurisdiction," *Cohill* remands arguably would not have been within the ambit § 1447(c). That is, prior to 1988, § 1447(c) only contemplated remands where the jurisdictional flaw existed prior to removal. Under this version, remands of pendent state-law claims where the federal claims dropped out of the case after it had been removed would not be subject to the jurisdictional bar of § 1447(d). By contrast, the current version of § 1447(c) contemplates that the jurisdictional flaw can arise "at any time before final judgment." Accordingly, from a temporal perspective at least, § 1367(c) remands are now potentially within the class of remands described in § 1447(c) and thus subject to the jurisdictional bar of § 1447(d).

**4.** Defendant CTI also cites *Snodgrass v. Provident Life & Accident Insurance Co.*, 147 F.3d 1163 (9th Cir.1998), for the proposition that appellate courts have jurisdiction to review remand orders entered pursuant to the Declaratory Judgment Act. In *Snodgrass*, the Ninth Circuit held without explanation that a "remand order entered pursuant to the discretionary jurisdiction provision of the Declaratory Judgment Act is" an " '[e]xceptional' remand order[ ], entered pursuant to some doctrine or authority other than § 1447(c)" and "not subject to § 1447(d)'s prohibition." *Snodgrass*, 147 F.3d at 1165. *Snodgrass*, however, does not provide controlling authority. Nor do we find the case to be persuasive because we can find no rationale in the decision to evaluate.

applying the jurisdictional bar of § 1447(d).

 A court "abstains" from hearing claims over which it has an *independent* basis of subject matter jurisdiction, whether it be federal question jurisdiction or diversity jurisdiction. *Cf. Burford v. Sun Oil Co.*, 319 U.S. 315, 317–18, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Accordingly, a remand premised on abstention cannot be colorably characterized as a remand based on lack of jurisdiction because in that case the claims at issue have an independent basis of subject matter jurisdiction.

 By contrast, when a court declines supplemental jurisdiction, it is declining to extend its jurisdiction to claims over which it has no independent basis of subject matter jurisdiction, i.e., state claims. Simply put, when declining supplemental jurisdiction over state claims, a district court strips the claims of the only basis on which they are within the jurisdiction of the court. *Cf. Voda*, 476 F.3d at 898 ("Voda asserts that [§ 1367(c)'s discretionary] considerations 'have nothing to do with, the certified question concerning existence of subject-matter jurisdiction.' We disagree. The text of § 1367(a) indicates § 1367(c) constitutes an express statutory exception to the authorization of jurisdiction granted by § 1367(a)."). Without the cloak of supplemental jurisdiction, state claims must be remanded for lack of subject matter jurisdiction.

 In short, because every § 1367(c) remand necessarily involves a predicate finding that the claims at issue lack an independent basis of subject matter jurisdiction, a remand based on declining supplemental jurisdiction can be colorably characterized as a remand based on lack of subject matter jurisdiction. Accordingly, a remand based on declining supplemental jurisdiction must be considered within the class of remands described in § 1447(c) and thus barred from appellate review by § 1447(d).

For these reasons, we conclude that we lack jurisdiction over Defendant CTI's appeal.

*DISMISSED*

Each party shall bear its own costs for this appeal.