NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ULTRAVISION TECHNOLOGIES, LLC,**
*Plaintiff-Appellant*

**v.**

**GOVISION, LLC**
*Defendant*

**SHENZHEN ABSEN OPTOELECTRONIC CO., LTD., ABSEN, INC.,**
*Defendants-Appellees*

---

2022-1098

---

Appeal from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00100-JRG-RSP, 2:18-cv-00112-JRG-RSP, Chief Judge J. Rodney Gilstrap.

---

Decided:  February 23, 2023

---

ALFRED ROSS FABRICANT, Fabricant LLP, Rye, NY, argued for plaintiff-appellant.  Also represented by PETER LAMBRIANAKOS, JOSEPH M. MERCADANTE, VINCENT J. RUBINO, III.

KEVIN PAUL MARTIN, Goodwin Procter LLP, Boston,

MA, argued for defendants-appellees.  Also represented by JORDAN BOCK, SRIKANTH K. REDDY; NAOMI BIRBACH, New York, NY; PATRICK MCCARTHY, Washington, DC.

_____

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

PROST, *Circuit Judge*.

Ultravision Technologies, LLC ("Ultravision") sued Shenzhen Absen Optoelectronic Co., Ltd. and Absen Inc. (collectively, "Absen" or "Appellees") for patent infringement.  After claim construction, Ultravision stipulated to noninfringement of claims 14 and 15 of U.S. Patent No. 9,047,791 ("the '791 patent") and claims 15 and 17 of U.S. Patent No. 9,666,105 ("the '105 patent").[1]  A jury later returned a verdict of noninfringement and invalidity of claim 9 of U.S. Patent No. 9,916,782 ("the '782 patent").  The district court subsequently denied Ultravision's motion for a new trial based on the '782 patent claim construction.  Ultravision appeals, arguing that the stipulated judgment and the judgment entered based on the jury's verdict should be overturned based on two claim-construction errors.  Because the district court correctly construed both claim terms, we affirm the final judgment.

_____

[1] Ultravision also stipulated to noninfringement of claims 12–13 and 19–20 of the '791 patent, J.A. 102, but those claims are no longer at issue here because we affirmed the Patent Trial and Appeal Board's ("Board") unpatentability determinations on those claims.  *Ultravision Techs., LLC v. Glux Visual Effects Tech (Shenzhen) Co.*, No. 2022-1344, 2023 WL 177691, at *1 (Fed. Cir. Jan. 13, 2023).

## BACKGROUND

### I

Claim 9 of the '782 patent, which depends from claim 1, was the only claim asserted at trial and is therefore the only claim at issue here. However, the only challenged term, "waterproof," appears in claim 1. Claim 1 of the '782 patent recites in relevant part: "wherein the modular display panel is *sealed to be waterproof*." '782 patent claim 1 (emphasis added).

At the district court, Ultravision argued that "waterproof" means "preventing water from entering the interior of the panel when exposed to weather," and Absen argued that it means "preventing water from entering (the panel)." *Ultravision Techs., LLC v. Govision LLC*, No. 2:18-cv-00100-JRG-RSP, 2020 WL 12570811, at *9–10 (E.D. Tex. Sept. 30, 2020) ("*Claim Construction Order*"). Absen also argued that Ultravision's construction rendered the claims indefinite. *Id.* After considering the parties' arguments, the district court ultimately construed "waterproof" as "ingress protection (IP) rating of IP 65 or higher." *Id.* at *12.

Under this "rating of IP 65 or higher" construction, the jury returned a verdict of noninfringement and invalidity of claim 9. J.A. 5137–38. The district court entered judgment according to the verdict, J.A. 101–02, and denied Ultravision's motion for a new trial, J.A. 100.

### II

The '791 and '105 patents, also related to display modules, claim modification kits to convert existing signs into electronic signs. Ultravision stipulated to noninfringement of claims 14 and 15 of the '791 patent and claims 15 and 17 of the '105 patent based on the construction of "display module." Ultravision agrees that claim 12 of the

'791 patent, which claims 14 and 15 depend from, is exemplary for purposes of this claim construction dispute[2]:

> A modification kit for converting an existing signage mounting structure to an electronic sign comprising:
>
> a plurality of *display modules*;
>
> a plurality of sign sections each having a front portion and a rear portion, the front portion defining at least two vertical columns of bays that span and define a height of the sign, each bay configured to receive one of the *display modules*, the rear portion configured to be attached to a beam surface of the existing signage structure to allow most of a rear surface of the rear portion to be exposed for servicing; and
>
> a plurality of power routing systems each including at least one node associated with each sign section with a plurality of individual power extensions each extending from one node to one of the bays.

'791 patent claim 12 (emphasis added).

Ultravision argued to the district court that the claim term "display module" should be given its plain and ordinary meaning. *Claim Construction Order*, 2020 WL 12570811, at *31. Absen argued that it should be construed to mean "a sealed display module having a pair of LED panels operatively coupled to a daughter board." *Id.* The district court adopted Absen's construction in part, construing the term to mean "module having a pair of LED

---

[2]    We cite to the '791 patent throughout because Ultravision has not separately argued or suggested that any distinction from the '105 patent impacts the construction of "display module."

display panels operatively coupled to a daughter board." *Id.* at *33

Ultravision stipulated to noninfringement of claims 14 and 15 of the '791 patent and claims 15 and 17 of the '105 patent under this construction of "display module" and, after the jury trial on the '782 patent, the district court entered final judgment accordingly.  J.A. 102.

## III

Ultravision appeals the final judgment as it relates to the '791, '105, and '782 patents.[3]  It bases this challenge only on its contention that the claim constructions of "waterproof" and "display modules" were erroneous.  Ultravision also challenges the denial of its motion for a new trial on the '782 patent.  That challenge rests on its claim construction argument and its position that the district court erroneously found that Ultravision was not prejudiced by the construction because it concluded that the result would have been the same under Ultravision's proposed construction.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

In general, claim terms are construed based on their ordinary meaning to a person of skill in the art who has read the entire specification and all the claims.  *Phillips v.*

---

[3]    Ultravision also appealed the "waterproof" construction as it related to claim 22 of U.S. Patent No. 9,978,294—the jury also returned a verdict of noninfringement and invalidity on that claim—but we have since affirmed the Board's determination that claim 22 of the '294 patent is unpatentable.  *See Ultravision Techs., LLC v. Glux Visual Effects Tech (Shenzhen) Co.*, No. 2022-1342, 2023 WL 177689, at *1 (Fed. Cir. Jan. 13, 2023).  Thus, that aspect of the appeal is now moot.

*AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The specification may also indicate, either expressly or by implication, that the patentee uniquely defined a claim term. *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016). Further, the specification's emphasis of a particular feature's importance to the invention can indicate "what the patentee had claimed and disclaimed." *See SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1269–70 (Fed. Cir. 2007). In addition, the prosecution history sheds light on a term's meaning because it "provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "We review claim construction based on intrinsic evidence de novo and review any findings of fact regarding extrinsic evidence for clear error." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1378 (Fed. Cir. 2021) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015)).

I

First, we address the construction of "waterproof" as it relates to claim 9 of the '782 patent. For the reasons below, we agree with the district court's construction: "ingress protection (IP) rating of IP 65 or higher." As a result, we affirm the final judgment of invalidity and noninfringement of claim 9. We likewise affirm the district court's denial of Ultravision's motion for a new trial. Because the claim construction is correct, we need not (and do not) reach the issue of whether the district court was correct that Ultravision was not prejudiced by the construction.

The '782 specification uses "waterproof" as a term of degree. *See, e.g.*, '782 patent col. 4 ll. 65–66 ("These panels are completely *waterproof against submersion in up to 3 feet of water*." (emphasis added)). And it repeatedly uses ingress protection ("IP") ratings to describe the degree of

protection from water.[4] '782 patent col. 7 ll. 42–52 ("In the present example, the housing 220 is sealed to prevent water from entering the housing. For example, the housing 220 may be sealed to have an ingress protection (IP) rating such as IP 67, which defines a level of protection against both solid particles and liquid. . . . In other embodiments, the housing may be sealed to have an IP rating of IP 65 or higher, e.g. IP 65, IP 66, IP 67, or IP 68."); *id.* at col 4 l. 61–col. 5 l. 3 ("In certain embodiments, the display is IP 67 rated and therefore waterproof and corrosion resistant. . . . In lower-cost embodiments where weatherproofing is not as significant, the panels can have an IP 65 or IP 66 rating."). An IP rating of 65 is the lowest value discussed as providing protection from water; it is the lowest IP rating mentioned in the specification.

The district court based its construction on an evaluation of the intrinsic record and relevant prosecution history. Further, the court reasoned that Ultravision's proposed construction, preventing water from entering the interior of the panel when exposed to weather, "would change the claim requirement of 'waterproof' to 'weatherproof'" and it "would not provide any bounds for the scope of the claims." *Claim Construction Order*, 2020 WL 12570811, at *11. As for Absen's proposed construction, preventing water from entering (the panel), the district court rejected it because it "require[s] levels of protection against every possible condition, including conditions that the panels would never be expected to operate in," which was inconsistent with the specification's description of "different levels of waterproof protection." *Id.* at *12.

The intrinsic record supports the district court's construction. As noted above, the specification discusses

---

4    Everyone agrees that IP ratings are standard ratings that reflect resistance to water and dust. Appellant's Br. 14 n.5; Appellees' Br. 7.

"waterproof" as varying in degree and consistently uses IP ratings of 65 or higher to describe the level of protection from water.  Further, during prosecution the patentee explained that the clause "when the panel is immersed in water," which appeared in a subsequently amended claim, "describes the degree to which the panel is 'sealed to be waterproof.'"  J.A. 3502.  That clause was then amended to "the panel compris[es] an ingress protection (IP) rating of IP 67 or IP 68"—indicating that the patentee also understood "waterproof" to vary in degree and that IP ratings describe that degree.  J.A. 3502–03.  Thus, the construction of "waterproof" as "ingress protection (IP) rating of IP 65 or higher" appropriately captures the term's meaning as used in the '782 patent.

Ultravision's arguments to the contrary are unpersuasive.

First, Ultravision relies on the doctrine of claim differentiation to argue that claim 6's recitation of "wherein the modular display panel comprises an ingress protection (IP) rating of IP 65, IP 66, IP 67, or IP 68" precludes a construction where IP ratings are present in the independent claim by virtue of the "waterproof" construction.  But the construction does not render the scope of claim 6 and the scope of claim 1 equivalent.  Instead, the construction of IP 65 or higher also includes an IP rating of 69, a value not claimed in claim 6.  Thus, claim 6 has a narrower scope than claim 1 even under the challenged construction.  Since the claim construction does not generate any redundancy, the doctrine of claim differentiation does not apply here.  *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1238 (Fed. Cir. 2016) ("This court has declined to apply the doctrine of claim differentiation where the claims are not otherwise identical in scope." (cleaned up)).

We are further unpersuaded by Ultravision's related argument that claim differentiation applies because IP 69 can't be included in the construction of "waterproof."  The

specification's failure, however, to explicitly call out an IP rating of 69 here doesn't serve to exclude it from the meaning of "waterproof." The specification emphasizes the desirability of protecting displays from water and an IP rating of 69 would provide protection from water under *more* conditions.

Regardless, "[c]laim differentiation is a guide, not a rigid rule," and does not alter a construction otherwise compelled by the intrinsic record. *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1391 (Fed. Cir. 2016). As discussed above, the intrinsic record here indicates that the scope the patentee ascribed to the relative term "waterproof" is an IP rating of 65 or higher. That the patentee also decided to specifically claim a particular subset of IP values—i.e., indicate the degree of waterproofing with more particularity—in claim 6 does not overcome that conclusion in these circumstances.

Next, Ultravision argues that the construction is incorrect because "waterproof" is never expressly defined as "IP 65 or higher" in the specification. Appellant's Br. 30–32. This argument misses the point: "waterproof" must be construed based on consideration of the claims and the specification as a whole. The specification did not need to, itself, provide an explicit definition; the context and use of "waterproof" in the claims and specification overall support the construction reached. *See Trs. of Columbia Univ.*, 811 F.3d at 1363 (rejecting an argument that explicit redefinition is required and noting that "[t]he only meaning that matters in claim construction is the meaning in the context of the patent.").

Ultravision's argument that the district court improperly relied on the prosecution history because the patentee's statements don't amount to clear and unmistakable disclaimer is similarly unpersuasive. Appellant's Br. 32. The prosecution history is relevant for more than an evaluation of disclaimer—it provides additional

context for evaluating how the term would be understood and how it was used in the patent. *Iridescent Networks, Inc. v. AT&T Mobility, LLC,* 933 F.3d 1345, 1353 (Fed. Cir. 2019) (rejecting a similar argument when construing "high quality of service connection" because "where there is no clear ordinary and customary meaning of a coined term of degree, we may look to the prosecution history for guidance without having to first find a clear and unmistakable disavowal."). Here, the patentee's discussion of "the degree to which the panel is 'sealed to be waterproof'" during prosecution, J.A. 3502, only bolsters the district court's conclusion about the meaning of "waterproof" based on the specification itself.

Finally, we need not look to extrinsic evidence here because the intrinsic record well supports the claim construction of "waterproof." *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence."). However, even if we were to look to extrinsic evidence for additional context, Ultravision's expert testimony would not counsel against the construction reached. As the district court pointed out, Ultravision's expert also acknowledged that "[o]ne useful reference that a person of ordinary skill in the art would be familiar with when dealing with waterproofing is the Ingress Protection (IP) standard." *Claim Construction Order*, 2020 WL 12570811, at *10 (quoting J.A. 1986).

Thus, we affirm the construction of "waterproof" as "ingress protection (IP) rating of IP 65 or higher." And, because Ultravision challenges the final judgment of invalidity and noninfringement of claim 9 of the '782 patent based only on this construction, we affirm the judgment.

## II

Ultravision also challenges the district court's construction of "display module"—it stipulated to

noninfringement of claims 14 and 15 of the '791 patent and claims 15 and 17 of the '105 based on the construction. We also reject this challenge because we agree with the district court's construction of "display module" as "module having a pair of LED display panels operatively coupled to a daughter board."

The court based its construction on its conclusion that "the patentee indicated that the daughter board and pair of LED panels are 'important and unique feature of the present invention,'" *Claim Construction Order*, 2020 WL 12570811, at *33 (citing '791 patent col. 34 ll. 41–63), and that "every disclosed embodiment includes a pair of LED panels operatively coupled to a daughter board," *id.* (citing '791 patent col. 25 ll. 30–33, col. 27 ll. 1–7, col. 38 ll. 9–14, col. 43 ll. 62–67).

We agree with the district court's evaluation. The specification describes that a display module includes a single daughter board connected to two display panels. Specifically, it explains that "each display module 14 also includes a centrally disposed daughter board 20 which handles the transfer of data between each of the display panel assemblies 14L and 14R respectively." '791 patent col. 34 ll. 41–45; *see also id.* at col. 25 ll. 30–33 ("Each individual display panel module . . . includes *dual* LED display panels." (emphasis added)), col. 27 ll. 2–6 ("[W]ith the aid of an interconnecting daughter board . . . a significant reduction is achieved as only a single DC/DC converter is utilized to power the *two* optimum sized LED panels . . . ." (emphasis added)), col. 43 ll. 63–66 (describing the figure as showing that "display module 14 generally includes the daughter board 20 and its associated LED display panel boards 14L and 14R respectively"). Additionally, the specification states that this arrangement of a single daughter board connected to two LED panels "is an important and unique feature of the present invention." *Id.* at col. 34 ll. 50–52.

Where the specification repeatedly emphasizes a feature as unique or distinguishing, we have found that indicative of "what the patentee has claimed and disclaimed." *SafeTCare Mfg.*, 497 F.3d at 1270. As discussed above, the specification can impart meaning explicitly or implicitly. Here, the specification is clear that the invention's "display module" has a pair of LED display panels operatively coupled to a daughter board. Thus, the disclosure indicates that a single LED panel coupled to the daughter board falls outside the claimed scope of "display module."

Ultravision is incorrect that the specification described the center mounting arrangement as unique instead of the pair of LED panels coupled to a daughter board. *See* Appellant's Br. 51. They are the same feature. The "important and unique" center mounting arrangement is described as involving a pair of LED displays with the daughter board located centrally between them; the specification explains that the arrangement is beneficial *because* it enables two LED panels to be powered and controlled by a single daughter board. *See* '791 patent col. 34 ll. 41–58.

Further, Ultravision primarily relies on a single sentence in the specification to argue that the district court's construction improperly excludes a disclosed single-panel embodiment. But the specification's statement that "[i]n one embodiment, the at least one LED board includes two LED boards disposed in a side-by-side arrangement along the X-axis," '791 patent col. 2 ll. 27–29, does not indicate that the claimed scope of "display module" captures an embodiment with a single LED panel coupled to a daughter board. First, it is not clear that "one LED board" is even synonymous with one LED panel. Further, the description of a single embodiment where a first aspect of the display module comprises "at least one LED board" (which clearly includes two LED boards) is not enough to overcome the specification's description of a *pair* of LED panels coupled

ULTRAVISION TECHNOLOGIES, LLC v. GOVISION, LLC          13

to a daughter board as important and unique to the invention.

In sum, we affirm the district court's construction of "display module" and affirm the stipulated judgment of noninfringement of claims 14 and 15 of the '791 patent and claims 15 and 17 of the '105 patent under that construction.

## CONCLUSION

We have considered Ultravision's other arguments and find them unpersuasive. Because the district court correctly construed "waterproof" and "display module," we affirm.

## AFFIRMED