Justice Scalia
delivered the opinion of the Court.
We granted certiorari to decide whether, under the Foreign Sovereign Immunities Act of 1976 (FSIA), petitioner is an “organ of a foreign state or political subdivision thereof.” 28 U. S. C. § 1603(b)(2). When we granted certiorari, however, we asked the parties also to address whether the Ninth Circuit had appellate jurisdiction in light of 28 U. S. C. § 1447(d).
I
The procedural history of this case is long and complicated; we recount only what is necessary to resolve the writ before us. The State of California, along with some private and corporate citizens (hereinafter collectively referred to as plaintiffs-respondents), filed suits in California state courts against various companies in the California energy market, *227 alleging that they had conspired to fix prices in violation of California law. Some of those defendants, in turn, filed cross-claims seeking indemnity from, inter alios, the Bonneville Power Administration (BPA), the Western Area Power Administration (WAPA), the British Columbia Hydro and Power Authority (BC Hydro), and petitioner Powerex. (We shall sometimes refer to these entities collectively as the cross-defendants.) BPA and WAPA are agencies of the United States Government. BC Hydro is a crown corporation of the Canadian Province of British Columbia that is wholly owned by the Province and that all parties agree constitutes a “foreign state” for purposes of the FSIA. See § 1603. Petitioner, also a Canadian corporation, is a wholly owned subsidiary of BC Hydro.
The cross-defendants removed the entire case to federal court. BC Hydro and petitioner both relied on § 1441(d), which permits a “foreign state,” as defined by the FSIA, see § 1603(a), to remove civil actions brought against it in state court. BPA and WAPA invoked § 1442(a), authorizing removal by federal agencies. Plaintiffs-respondents moved to remand, arguing that petitioner was not a foreign state, and that the cross-claims against BPA, WAPA, and BC Hydro were barred by sovereign immunity. Petitioner opposed remand on the ground that it was a foreign state under the FSIA; the other cross-defendants opposed remand on the ground that their sovereign immunity entitled them to be dismissed from the action outright.
The District Court initially concluded (we assume correctly) that § 1442(a) entitled BPA and WAPA to remove the entire case and that BC Hydro was similarly entitled under § 1441(d). App. to Pet. for Cert. 20a. It thus believed that whether the case should be remanded “hinge[d on its] jurisdictional authority to hear the removed claims, not whether the actions were properly removed in the first instance.” Ibid. The District Court held that petitioner did not qualify as a foreign sovereign under the FSIA. Id., at 33a-38a. It *228 also decided that BC Hydro enjoyed sovereign immunity under the FSIA. Id., at 21a-33a. And it concluded that BPA and WAPA were immune from suit in state court, which the court believed deprived it of jurisdiction over the claims against those agencies. Id., at 38a-44a. Having reached these conclusions, the District Court remanded the entire case. Id., at 44a.
Petitioner appealed to the Court of Appeals for the Ninth Circuit, arguing that it was a foreign sovereign under the FSIA. BPA and WAPA (but not BC Hydro) also appealed, asserting that the District Court, before remanding the case, should have dismissed them from the action in light of their sovereign immunity. Plaintiffs-respondents, for their part, rejoined that both appeals were jurisdictionally barred by § 1447(d) and that the District Court had not erred in any event. The Ninth Circuit rejected the invocation of § 1447(d), holding that that provision did not preclude it from reviewing substantive issues of law that preceded the remand order. California v. NRG Energy Inc., 391 F. 3d 1011, 1022-1023 (2004). It also found that the District Court had jurisdiction over the case because BPA, WAPA, and BC Hydro properly removed the entire action. Id., at 1023. Turning to the merits, the Ninth Circuit affirmed the holding that petitioner was not a “foreign state” for purposes of the FSIA. Id., at 1025-1026. It also upheld the District Court’s conclusion that BPA, WAPA, and BC Hydro retained sovereign immunity, id., at 1023-1025, but reversed its decision not to dismiss BPA and WAPA before remanding, id., at 1026-1027.
Petitioner sought certiorari review of the Ninth Circuit’s determination that it was not an “organ of a foreign state or political subdivision thereof” under § 1603(b)(2). We granted certiorari on this question, but asked the parties to address in addition whether the Ninth Circuit had jurisdiction over petitioner’s appeal notwithstanding § 1447(d). 549 U. S. 1178 (2007).
*229 II
The authority of appellate courts to review district-court orders remanding removed cases to state court is substantially limited by statute. Title 28 U. S. C. § 1447(d) provides (with an exception for certain civil rights cases) that “[a]n order remanding a ease to the State court from which it was removed is not reviewable on appeal or otherwise.” Determining whether the Ninth Circuit was permitted to review the District Court’s remand is, alas, not as easy as one would expect from a mere reading of this text, for we have interpreted § 1447(d) to cover less than its words alone suggest. In Thermtron Products, Inc. v. Hermansdorfer, 423 U. S. 336, 345-346 (1976), we held that § 1447(d) should be read in pari materia with § 1447(c), so that only remands based on the grounds specified in the latter are shielded by the bar on review mandated by the former. At the time of Thermtron, § 1447(c) stated in relevant part:
“ ‘If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case.’” Id., at 342.
Consequently, Thermtron limited §1447(d)’s application to such remands. Id., at 346. In 1988, Congress amended § 1447(c) in relevant part as follows:
“A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under [28 U. S. C. §] 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.” § 1016(c)(1), 102 Stat. 4670.
When that version of § 1447(c) was in effect, we thus interpreted § 1447(d) to preclude review only of remands for lack of subject-matter jurisdiction and for defects in removal pro *230 cedure. See Quackenbush v. Allstate Ins. Co., 517 U. S. 706, 711-712 (1996); Things Remembered, Inc. v. Petrarca, 516 U. S. 124, 127-128 (1995).
Although § 1447(c) was amended yet again in 1996, 110 Stat. 3022, we will assume for purposes of this case that the amendment was immaterial to Thermtron’s gloss on § 1447(d), so that the prohibition on appellate review remains limited to remands based on the grounds specified in Quackenbush. We agree with petitioner that the remand order was not based on a defect in removal procedure, so on the foregoing interpretation of Thermtron the remand is immunized from review only if it was based on a lack of subject-matter jurisdiction.
A
The principal submission of the Solicitor General and petitioner is that the District Court’s remand order was not based on a lack of “subject matter jurisdiction” within the meaning of § 1447(c) because that term is properly interpreted to cover only “a defect in subject matter jurisdiction at the time of removal that rendered the removal itself jurisdictionally improper.” Brief for United States as Amicus Curiae 8; see also id., at 8-11; Brief for Petitioner 42-45. Under this interpretation, the District Court’s remand order was not based on a defect in subject-matter jurisdiction for purposes of § 1447(c), since the cross-defendants other than petitioner were statutorily authorized to remove the whole case in light of their sovereign status. The Ninth Circuit appears to have relied, at least in part, on this rationale. See 391 F. 3d, at 1023.
We reject this narrowing construction of §1447(c)’s unqualified authorization of remands for lack of “subject matter jurisdiction.” Nothing in the text of § 1447(c) supports the proposition that a remand for lack of subject-matter jurisdiction is not covered so long as the case was properly removed in the first instance. Petitioner and the Solicitor General do not seriously dispute the absence of an explicit textual *231 limitation. Instead, relying on the statutory history of § 1447(c), they make a three-step argument why the provision is implicitly limited in this manner. First, they note that the pre-1988 version of § 1447(c) mandated remand “[i]f at any time before final judgment it appeared] that the case was removed improvidently and without jurisdiction,” 28 U. S. C. § 1447(c) (1982 ed.). That version, obviously, authorized remand only for cases that were removed improperly. Second, they contend that the purpose of the 1988 amendment was to impose a time limit for raising nonjurisdictional objections to removal, a contention that is certainly plausible in light of the structure of the amended provision:
“A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.” § 1447(c) (1988 ed.).
Finally, they conclude that since the purpose of the amendment was to alter the timing rules, there is no reason to think that Congress broadened the scope of § 1447(c) to authorize the remand of cases that had been properly removed. The language “lacks subject matter jurisdiction,” which was newly added to § 1447(c), must be construed to cover only cases in which removal was jurisdictionally improper at the outset.
But the very statutory history upon which this creative argument relies conclusively refutes it. The same section of the public law that amended § 1447(c) to include the phrase “subject matter jurisdiction” also created a new § 1447(e). See § 1016(c), 102 Stat. 4670. Section 1447(e), which remains on the books, states:
“If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter *232 jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.”
This unambiguously demonstrates that a case can be properly removed and yet suffer from a failing in subject-matter jurisdiction that requires remand. A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning. See, e. g., IBP, Inc. v. Alvarez, 546 U. S. 21, 34 (2005). That maxim is doubly appropriate here, since the phrase “subject matter jurisdiction” was inserted into § 1447(c) and § 1447(e) at the same time. There is no reason to believe that the new language in the former provision, unlike the new language simultaneously inserted two subsections later, covers only cases in which removal itself was jurisdictionally improper. We hold that when a district court remands a properly removed case because it nonetheless lacks subject-matter jurisdiction, the remand is covered by § 1447(c) and thus shielded from review by § 1447(d).[1]
B
That holding requires us to determine whether the ground for the District Court’s remand in the present case was lack of subject-matter jurisdiction. As an initial matter, it is quite clear that the District Court was purporting to remand on that ground. The heading of the discussion section of the remand order is entitled “Subject Matter Jurisdiction Over the Removed Actions.” App. to Pet. for Cert. 20a. And *233 the District Court explicitly stated that the remand "issue hinges ... on the Court’s jurisdictional authority to hear the removed claims.” Ibid. Were any doubt remaining, it is surely eliminated by the District Court’s order denying a stay of the remand, which repeatedly stated that a lack of subject-matter jurisdiction required remand pursuant to § 1447(c). See App. 281-286.
• For some Members of this Court, the foregoing conclusion that the District Court purported to remand for lack of subject-matter jurisdiction is alone enough to bar review under § 1447(d). See Osborn v. Haley, 549 U. S. 225, 264 (2007) (Scalia, J., joined by Thomas, J., dissenting). Even assuming, however, that § 1447(d) permits appellate courts to look behind the district court’s characterization, see Kircker v. Putnam Funds Trust, 547 U. S. 633, 641, n. 9 (2006) (reserving the question), we conclude that appellate review is barred in this case.[2] There is only one plausible explanation of what legal ground the District Court actually relied upon for its remand in the present case. As contended by plaintiffs-respondents, it was the court’s lack of power to adjudicate the claims against petitioner once it concluded both that petitioner was not a foreign state capable of independently removing and that the claims against the other removing cross-defendants were barred by sovereign immunity. Brief for Plaintiffs-Respondents 17-21, 25-26. Though we have not passed on the question whether, when sovereign immunity bars the claims against the only parties capable of removing the case, subject-matter jurisdiction exists to entertain the remaining claims, cf. n. 3, infra, the point is *234 certainly debatable. And we conclude that review of the District Court’s characterization of its remand as resting upon lack of subject-matter jurisdiction, to the extent it is permissible at all, should be limited to confirming that that characterization was colorable. Lengthy appellate disputes about whether an arguable jurisdictional ground invoked by the district court was properly such would frustrate the purpose of § 1447(d) quite as much as determining whether the factfinding underlying that invocation was correct. See Kircher, supra, at 649-650 (Scalia, J., concurring in part and concurring in judgment). Moreover, the line between misclassifying a ground as subject-matter jurisdiction and misapplying a proper ground of subject-matter jurisdiction is sometimes elusively thin. To decide the present case, we need not pass on whether § 1447(d) permits appellate review of a district-court remand order that dresses in jurisdictional clothing a patently nonjurisdictional ground (such as the docket congestion invoked by the District Court in Thermtron, 423 U. S., at 344). We hold that when, as here, the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d).
Petitioner puts forward another explanation for the re-, mand, which we find implausible. Petitioner claims that, because the entire case was properly removed, the District Court had the discretion to invoke a form of supplemental jurisdiction to hear the claims against it, and that its remand rested upon the decision not to exercise that discretion. In short, petitioner contends that the District Court was actually relying on Carnegie-Mellon Univ. v. Cohill, 484 U. S. 343, 357 (1988), which authorized district courts to remand removed state claims when they decide not to exercise supplemental jurisdiction. Brief for Petitioner 45-48; Reply Brief for Petitioner 16-20. It is far from clear, to begin with, (1) that supplemental jurisdiction was even available *235 in the circumstances of this case;[3] and (2) that when discretionary supplemental jurisdiction is declined the remand is not based on lack of subject-matter jurisdiction for purposes of § 1447(c) and § 1447(d).[4] Assuming those points, however, there is no reason to believe that the District Court’s remand was actually based on this unexplained discretionary decision. The District Court itself never mentioned the possibility of supplemental jurisdiction, neither in its original decision, see App. to Pet. for Cert. 20a-44a, nor in its order denying petitioner’s motion to stay the remand pending appeal, App. 281-286. To the contrary, as described above, it relied upon lack of subject-matter jurisdiction — which, in petitioner’s view of things (but see n. 4, this page) would not include a Cohill remand. Moreover, it does not appear from the record that petitioner ever even argued to the District Court that supplemental jurisdiction was a basis for retaining the claims against it. There is, in short, no reason to believe that an unmentioned nonexercise of Cohill discretion was the basis for the remand.
C
Part of the reason why the Ninth Circuit concluded it had appellate jurisdiction is a legal theory quite different from those discussed and rejected above. Petitioner, along with the other appellants, convinced the court to apply Circuit precedent holding that § 1447(d) does not preclude review of a district court’s merits determinations that precede the re *236 mand. See 391 F. 3d, at 1023 (citing, inter alia, Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F. 2d 273, 276-277 (CA9 1984)). Petitioner has not completely abandoned this argument before us, see Brief for Petitioner 50, and it is in any event desirable to address this aspect of the Ninth Circuit’s judgment.
The line of Ninth Circuit jurisprudence upon which petitioner relied appears to be invoking our decision in Waco v. United States Fidelity & Guaranty Co., 293 U. S. 140 (1934). There the District Court, in a single decree, had entered one order dismissing a cross-complaint against one party, and another order remanding because there was no diversity of citizenship in light of the dismissal. Id., at 142. We held that appellate jurisdiction existed to review the order of dismissal, although we repeatedly cautioned that the remand order itself could not be set aside. Id., at 143-144. The Ninth Circuit’s application of Waco to petitioner’s appeal was mistaken. As we reiterated in Kircher, see 547 U. S., at 645-646, n. 13, Waco does not permit an appeal when there is no order separate from the unreviewable remand order. Here petitioner can point to no District Court order, separate from the remand, to which it objects and to which the issue of its foreign sovereign status is material. Thus, petitioner’s invocation of Wixco amounts to a request for one of two impermissible outcomes: an advisory opinion as to its FSIA status that will not affect any order of the District Court, or a reversal of the remand order. Waco did not, and could not, authorize either form of judicial relief.
D
Finally, petitioner contends, with no textual support, that § 1447(d) is simply inapplicable to a suit removed under the FSIA. It asserts that “§ 1447(d) must yield because Congress could not have intended to grant district judges irrevocable authority to decide questions with such sensitive foreign-relations implications.” Brief for Petitioner 49. *237 We will not ignore a clear jurisdictional statute in reliance upon supposition of what Congress really wanted. See Connecticut Nat. Bank v. Germain, 503 U. S. 249, 253-254 (1992). Petitioner’s divination of congressional intent is flatly refuted by longstanding precedent:
“Section 1447(d) applies ‘not only to remand orders made in suits removed under [the general removal statute], but to orders of remand made in cases removed under any other statutes, as well.’... Absent a clear statutory command to the contrary, we assume that Congress is ‘aware of the universality of th[e] practice’ of denying appellate review of remand orders when Congress creates a new ground for removal.” Things Remembered, 516 U. S., at 128 (quoting United States v. Rice, 327 U. S. 742, 752 (1946); emphasis deleted and alterations in original).
Congress has repeatedly demonstrated its readiness to exempt particular classes of remand orders from § 1447(d) when it wishes — both within the text of § 1447(d) itself (which exempts civil rights cases removed pursuant to 28 U. S. C. § 1443), and in separate statutes, see, e. g., 12 U. S. C. § 1441a(l)(3)(C), § 1819(b)(2)(C); 25 U. S. C. § 487(d).
We are well aware that § 1447(d)’s immunization of erroneous remands has undesirable consequences in the FSIA context. A foreign sovereign defendant whose case is wrongly remanded is denied not only the federal forum to which it is entitled (as befalls all remanded parties with meritorious appeals barred by § 1447(d)), but also certain procedural rights that the FSIA specifically provides foreign sovereigns only in federal court (such as the right to a bench trial, see 28 U. S. C. § 1330(a); § 1441(d)). But whether that special concern outweighs §1447(d)’s general interest in avoiding prolonged litigation on threshold nonmerits questions, see Kircher, supra, at 640, is a policy debate that belongs in the halls of Congress, not in the hearing room of this Court. As *238 far as the Third Branch is concerned, what the text of § 1447(d) indisputably does prevails over what it ought to have done.[5]
* * *
Section 1447(d) reflects Congress’s longstanding “policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.” Rice, supra, at 751. Appellate courts must take that jurisdictional prescription seriously, however pressing the merits *239 of the appeal might seem. We hold that § 1447(d) bars appellate consideration of petitioner’s claim that it is a foreign state for purposes of the FSIA. We therefore vacate in part the judgment of the Ninth Circuit and remand the case with instructions to dismiss petitioner’s appeal for want of jurisdiction.
It is so ordered.

 To be dear, we do not suggest that the question whether removal is proper is always different from the question whether the district court has subject-matter jurisdiction, for the two are often identical in light of the general rule that postremoval events do not deprive federal courts-of subject-matter jurisdiction. See, e. g., Wisconsin Dept. of Corrections v. Schacht, 524 U. S. 381, 391 (1998). We merely hold that when there is a divergence, such that a district court lacks subject-matter jurisdiction to hear a daim that was properly removed, the consequent remand is authorized by § 1447(c) and appellate review is barred by § 1447(d).

 The Court’s opinion in Osborn v. Haley, 549 U. S. 225 (2007), had nothing to say about the scope of review that is permissible under § 1447(d), since it held that § 1447(d) was displaced in its entirety by 28 U. S. C. § 2679(d)(2). See 549 U. S., at 243-244 (reasoning that, of the two forum-determining provisions — 11447(d), the generally applicable section, and §2679(d)(2), a special prescription governing Westfall Act cases — “only one can prevail”).

 Petitioner provides no authority from this Court supporting the proposition that a district court presiding over a multiparty removed case can invoke supplemental jurisdiction to hear claims against a party that cannot independently remove when the claims against the only parties authorized to remove are barred by sovereign immunity.

 We have never passed on whether Cohill remands are subject-matter jurisdictional for purposes of post-1988 versions of § 1447(c) and § 1447(d). See Things Remembered, Inc. v. Petrarca, 516 U. S. 124, 129-130 (1995) (Kennedy, J., concurring) (noting that the question is open); cf. Cohill, 484 U. S., at 355, n. 11 (discussing the pre-1988 version of § 1447(c)).

 The dissent’s belief that there is an implicit FSIA exception to § 1447(d), see post, at 239-244 (opinion of Breyer, J.), rests almost exclusively on our recent decision in Osborn. The dissent reads Osborn to stand for the proposition that any “conflict” between a specific, later-enacted statute and § 1447(d) should be resolved in favor of the former. Post, at 240-241. The reason why the dissent is forced to the parenthetical admission that “Osborn did not say as much,” post, at 240, is because the dissent drastically overreads the case. Osborn held only that § 1447(d) was trumped by the Westfall Act’s explicit provision that removal was conclusive upon the Attorney General’s certification: As between “the two antishuttling commands,” the Court said, “only one can prevail.” 549 U. S., at 244. The opinion was quite clear that the only statutory rivalry with which it was concerned was dueling “antishuttling commands”: “Only in the extraordinary case in which Congress has ordered the intercourt shuttle to travel just one way — from state to federal court — does today’s decision hold sway.” Ibid,. That is why Osborn repeatedly emphasized that Westfall Act certification is “ ‘conclusiv[e] . . . for purposes of removal,”’ id., at 242, 243, an emphasis that the dissent essentially ignores, post, at 240-241.
Osborn is no license for courts to assume the legislative role by characterizing the consequences of § 1447(d)’s bar on appellate review as creating a conflict, leaving it to judges to suppress that provision when they think Congress undervalued or overlooked those consequences. The dissent renders a quintessential policy judgment in concluding that appellate “delay is necessary, indeed, crucial,” post, at 242, when the rights of a foreign sovereign are at stake. We have no idea whether this is a wise balancing of the various values at issue here. We are confident, however, that the dissent is wrong to think that it would improve the “law in this democracy,” post, at 244, for judges to accept the lawmaking power that the dissent dangles before them.