# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 14, 2015        Decided March 10, 2015

No. 14-1143

AIRLINES FOR AMERICA AND
INTERNATIONAL AIR TRANSPORT ASSOCIATION,
PETITIONERS

v.

TRANSPORTATION SECURITY ADMINISTRATION AND
JOHN S. PISTOLE, ADMINISTRATOR
RESPONDENTS

———

On Petition for Review of an Order of
the Transportation Security Administration

———

*Paul D. Clement* argued the cause for petitioners. With him on the briefs were *Jeffrey M. Harris*, *William R. Levi*, *David A. Berg*, and *Jeffrey N. Shane*.

*Jeffrey Clair*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief was *Scott R. McIntosh*, Attorney.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: The Transportation Security Administration ("TSA") has charge of the "screening of all passengers and property" moving by passenger aircraft. 49 U.S.C. § 44901(a). To cover the costs of screening, it is authorized to impose a "uniform fee . . . on passengers . . . in air transportation and intrastate air transportation originating at airports in the United States." § 44940(a)(1). Airlines collect the fees from passengers and remit the funds to TSA. § 44940(e)(2)-(3).

In 2013, Congress reset the fee to "$5.60 per one-way trip in air transportation or intrastate air transportation that originates at an airport in the United States." Bipartisan Budget Act of 2013, Pub. L. No. 113-67, § 601(b), 127 Stat. 1165, 1187 (2013) (codified as amended at 49 U.S.C. § 44940(c)(1)). TSA implemented this amendment in an Interim Final Rule. *Adjustment of Passenger Civil Aviation Security Service Fee* ("*Interim Final Rule*"), 79 Fed. Reg. 35,462, 35,465-66 (Jun. 20, 2014) (codified as amended at 49 C.F.R. §§ 1510 *et seq.*). The parties agree that a "one-way trip" means the same in the statute as in TSA's regulations, namely, a continuous trip from one point to another with no stopover exceeding specified limits (e.g., four hours between domestic flights). See 49 C.F.R. § 1510.3. Thus a trip from New York to Los Angeles to San Francisco and back to New York, with stopovers exceeding four hours in each of the California cities, would be a round trip comprised of three one-way trips.

Airline trade organizations representing individual airlines filed this petition to challenge TSA's rules on two grounds. First, the airlines argued that TSA had no authority

to impose fees in excess of $11.20 on passengers with round-trip itineraries that involved multiple "one-way trips" (as in the example above).  While the case has been pending, Congress further amended the fee statute, adding language that the parties agree gave the airlines what they sought and therefore moots this aspect of the case.  Pub. L. No. 113-294, § 1, 128 Stat. 4009 (2014) (codified at 49 U.S.C. § 44940(c)(1)); TSA, Office of Revenue, *Notice of Immediate Adjustments* (Dec. 19, 2014).  We thus dismiss that claim.

The airlines' remaining claim is that the statute precludes TSA from charging a fee on passengers whose travel begins abroad but includes a connecting flight within the United States—for example, a passenger who flies from Paris to New York and then takes a connecting flight on to Chicago.  On this claim, we find that the airlines have standing but lose on the merits.

\* \* \*

TSA contends that the airlines lack standing for want of suffering any "injury in fact":  the security fees are paid by customers, not the airlines themselves, and the airlines failed to produce evidence demonstrating that the fees caused any economic losses.  But the passengers' role as ultimate payers of the fee says nothing about its incidence—that is, how much of the burden falls upon the customers and airlines, respectively.  We recognized in *Branton v. FCC*, 993 F.2d 906 (D.C. Cir. 1993), the basic proposition that "increasing the price of an activity . . . will decrease the quantity of that activity demanded in the market."  *Id*. at 911-12 (citing PAUL A. SAMUELSON & WILLIAM D. NORDHAUS, ECONOMICS 60-61 (12th ed. 1985)).  In *Branton* itself we saw an exception to the principle, thinking it "speculative" that fining NPR for broadcasting indecent language would deter it from doing so

in the future because, as a non-profit journalistic entity, it was somewhat insulated from market forces. *Id.* While there are other exceptions to the rule (the cognoscenti will think immediately of so-called "Giffen goods"), TSA has given no reason to suspect that any such exception is applicable here. Thus, the security fees injure the airlines by increasing the net price for airline tickets and reducing demand for those tickets.

While the impact on demand is likely to be modest, the direction of change in demand is clear (downward). The Government Accountability Office estimated in 2012 that a proposed increase in fees from $2.50 to $5.50 per enplanement, though very small as a proportion of average airline charges, would decrease the demand for airline tickets, offsetting the government's net revenue gain from the fee increase by over $100 million over a three-year period. Government Accountability Office, 2012 Annual Report at 309-10 (Feb. 2012). In any event, the court's duty to refrain from merits rulings until assured of jurisdiction, see *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), does not mandate an econometric study of the exact quantity of change. And, as the injury is inferable from generally applicable economic principles rather than from any special circumstances, it is sufficiently "self-evident" that we require "no evidence outside the administrative record." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002).

\* \* \*

Section 44940(c)(1) provides that the security fee

shall be $5.60 per one-way trip in air transportation or intrastate air transportation *that originates at an airport in the United States . . . .*

49 U.S.C. § 44940(c)(1) (emphasis added). TSA reads this as authorizing it to collect fees from passengers whose travel begins abroad but includes a connecting flight within the United States, as in the example we gave earlier: a passenger traveling from Paris to Chicago with a connecting flight in New York. *Interim Final Rule*, 79 Fed. Reg. at 35,465-66. This reading rests on two interpretive arguments.

First, TSA argues that the italicized clause does not modify "one-way trip"—a term TSA concedes means overall trip and not a mere segment—but only "air transportation or intrastate air transportation." We agree. Attaching the clause to "one-way trip," as the airlines propose, would mean that in the pre-2013 version of the statute the clause modified "enplanement," which the 2013 statute replaced with "one-way trip." See Aviation and Transportation Security Act, Pub. L. No. 107-71, § 118, 115 Stat. 597, 626 (2001) (codified at 49 U.S.C. § 44940(c) before the 2013 amendment) (directing TSA to set the fee at no more than "$2.50 *per enplanement* in air transportation or intrastate air transportation that originates at an airport in the United States . . . ."). But this would be incoherent. Unlike "air transportation," which spans multiple locations, an "enplanement" happens at a single place—the airport of departure. It would be very odd to speak of an enplanement as "originating" somewhere. Congress's specification of an originating location must have applied to the "air transportation or intrastate air transportation," not the "enplanement." And the airlines themselves insist that the 2013 substitution of the term "one-way trip" for "enplanement" "did not alter which antecedent was modified" by the italicized clause. Pet'rs' Reply 12; see also *id*. at 13-14.

Moreover, under the airlines' reading we would have to believe that Congress intended different meanings for a nearly

identical phrase as used in two neighboring provisions. Section 44940(a)(1) tells TSA to impose the fee on "passengers of air carriers and foreign air carriers in air transportation and intrastate air transportation originating at airports in the United States." This provision unmistakably uses the phrase "originating at airports in the United States" to modify the immediately preceding nouns "air transportation and intrastate air transportation." A similar reading for § 44940(c)(1)'s nearly identical phrase—"air transportation or intrastate air transportation that originates at an airport in the United States"—harmonizes usage across the two provisions and is preferable on that account. See, e.g., *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007).

Second, TSA contends that the terms "air transportation" and "intrastate air transportation" may refer to segments of longer trips, such that, for instance, a flight from New York to Chicago constitutes "air transportation . . . that originates at an airport in the United States," even if it is part of a longer "one-way trip" that began in Paris. See *Interim Final Rule*, 79 Fed. Reg. at 35,465 ("[I]f there is covered air transportation at any point in the trip . . . TSA has authority to impose the fee."). The airlines seem to share this idea, if only for a moment. Their opening brief acknowledges that an itinerary that does not contain a one-way trip in air transportation originating at an airport in the United States might, nonetheless, include "air transportation . . . originating at airports in the United States"—a proposition implying that "air transportation" may refer to segments of "one-way trips." See Pet'rs' Br. 27. Elsewhere, however, the airlines maintain that "in the case of a one-way trip beginning abroad with a tail-end domestic enplanement, both the one-way trip and the air transportation originate abroad." Pet'rs' Reply Br. 12.

The statute's definitional provisions—all but ignored by both parties here—do provide some indication that "air

transportation" refers to an overall trip. "Air transportation" is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5). In turn, "'foreign air transportation' means the transportation . . . between a place in the United States and a place outside the United States *when any part of the transportation is by aircraft*." § 40102(a)(23) (emphasis added). And, similarly, "'interstate air transportation' means the transportation . . . between a place in . . . a State . . . and a place in . . . another State . . . *when any part of the transportation is by aircraft*." § 40102(a)(25) (emphasis added). Use of the limiting phrase "when any part of the transportation is by aircraft" in both of the last two definitions may seem to imply that the reference is to overall trips, not mere segments. If only the whole trip constitutes "air transportation," a trip from Paris to Chicago with a connecting flight in New York would not include any "air transportation . . . that originates at an airport in the United States." (More curiously, neither would a flight from Detroit to Chicago if the passenger starts out by bus in Windsor, Ontario.)

But even if the definitional provisions demonstrate that "air transportation" refers to an overall trip, the same term may *also* refer to the individual segments of such a trip. Indeed, the ordinary meaning of the term encompasses both a whole trip and its parts.

The airlines argue that the logic of TSA's rule for the passenger traveling from abroad would permit TSA to charge multiple fees on one-way trips, defying Congress's intention to "simplif[y] the fee structure to a flat, $5.60 fee per one-way trip, regardless of the number of enplanements." H. Comm. On the Budget, 113th Cong., Rep. on Bipartisan Budget Act of 2013, at 18 (Comm. Print Feb. 2014). But the fee imposed here is entirely in line with § 44940(c)(1)'s instruction that the

fee "shall be $5.60 per one-way trip"; the fact that the trips in question include non-domestic segments does not change that.

The airlines further contend that Congress intended to make enplanements entirely irrelevant to the scheme. But all the legislative history shows is that Congress meant to render irrelevant "the *number* of enplanements" in the course of imposing a cap of "a flat, $5.60 fee per one-way trip." TSA's imposition of a single fee on a one-way trip from Paris to Chicago with a connecting flight in New York is fully consistent with this purpose.

The airlines also claim that TSA's rule flouts Congress's intention to promote "uniform treatment" across passengers with similar itineraries. Indeed, TSA's interpretation requires certain similarly situated passengers to be "treated disparately," as the airlines suggest. For instance, passengers traveling from Paris to Chicago will or will not be charged depending on whether their one-way trip includes a connecting flight in the United States. But some such "disparate treatment" appears unavoidable. Under the airlines' preferred reading, for example, passengers traveling from New York to Chicago will or will not be charged the fee depending on whether the flight was part of a longer itinerary commencing abroad or a complete trip in itself. Contrary to the airlines' suggestion, neither Congress's stated purpose of "simplif[ying] the fee structure" nor its statutory instruction that the fee be "uniform," § 44940(a)(1), gives any indication that one form of asymmetry is preferable to the other.

Under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the agency's interpretation "governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.,* 556 U.S. 208, 218 (2009).

The textual ambiguity, coupled with the lack of any compelling legislative history, and TSA's explanation that its construction "better aligns the imposition of the fee with those who benefit from the security services provided," *Interim Final Rule,* 79 Fed. Reg. at 35,465, clearly allows TSA's decision to surmount this hurdle.

\* \* \*

The petition for review is

*Dismissed in part and denied in part.*