**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

ELITE OIL FIELD ENTERPRISES, INC.,
a Colorado corporation,

     Plaintiff - Appellee,

v.

GARRETT REED, individually and as
trustee of Ventana Investment Trust;
REILLY REED, an individual; ELEMENT
SERVICES, LLC, a Colorado limited
liability company; JHENNA DAWN
REED, an individual; REEDESIGN
CONCEPTS, LLC, a Colorado limited
liability company; ROBERT KUBISTEK,
an individual,

     Defendants - Appellants,

and

BOND R. BAIAMONTE, an individual,

     Defendant.

No. 19-1406

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CV-00539-RBJ)**
_____

Submitted on the briefs:[*]

Jordan D. Factor, James Helfrich, and Brenton L. Gragg, Allen Vellone Wolf Helfrich & Factor P.C., Denver, Colorado, for Appellant.

Robert Bernhoft, The Bernhoft Law Firm, S.C., Austin, Texas, for Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **MURPHY**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

Defendants Garrett Reed, Reilly Reed, Element Services, LLC, Jhenna Reed, Reedesign Concepts, and Robert Kubistek seek to appeal from the district court's order remanding this case from federal district court to Colorado state court due to lack of subject matter jurisdiction. Plaintiff Elite Oil Field Enterprises, Inc. (Elite) has moved to dismiss the appeal for lack of appellate jurisdiction. Having reviewed the motion to dismiss and the record on appeal, we conclude that we lack subject matter jurisdiction over this appeal. We therefore grant Elite's motion and dismiss the appeal.

I

*Factual background*

Plaintiff Elite is a Colorado corporation that was formed in March of 2012 by Reilly Reed (Reilly) and Dustin Tixier (Tixier). Elite was formed to provide

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

roustabout services for the oil field industry. Immediately after its formation, Elite in turn formed two subsidiary corporations: Elite Oil Field Services, Inc. and Elite Oil Field Equipment, Inc.

The organizational meeting of Elite took place in early April of 2012 at its principal place of business in Lamar, Colorado. Tixier accepted a 75% ownership interest in Elite, while Reilly accepted a 25% ownership interest in Elite. Tixier, Reilly, and an individual named Jason Whisenand were elected as the directors and officers of Elite.

At some point after the formation, Reilly became upset that he only had a 25% ownership interest in Elite and believed that he was entitled to a 50% share in Elite.

During the Thanksgiving 2012 holiday, Reilly's brother Garrett Reed (Garrett), a California resident, was present in Colorado for a family gathering, and allegedly told Reilly that the way for Reilly to gain control of Elite was to "run it into the ground," or words to that effect. Aplt. App. at 16-17.

In September of 2013, Reilly, Tixier and Whisenand met at Elite's Greeley, Colorado office. During the meeting, the three men allegedly discussed the value of Reilly's 25% ownership interest in Elite. Following the meeting, Reilly and Tixier allegedly exchanged proposals regarding the possibility of Reilly becoming a 50% owner of Elite. No such agreement was ever reached, however.

Elite's gross revenues grew dramatically between 2012 and 2015, rising from approximately $1,062,241 in 2012 to over $10 million in 2015. Reilly perceived himself, rather than Tixier, as responsible for this growth.

3

In June of 2016, Garrett allegedly sent an email to Reilly stating, in part, "I just don't think there's a way you're getting to your money without destroying Elite." *Id.* at 17.

At some point thereafter, Garrett and Reilly allegedly devised a scheme for Reilly to form surreptitiously a competing company known as Element Services, LLC (Element), and for Element to improperly lure away Elite's customers and employees with the intent of economically harming Elite and rendering Elite unable to continue its operations at the level it had achieved.

In July of 2016, Reilly allegedly registered Element with the Colorado Secretary of State and listed himself as the sole member of Element. Garrett allegedly counseled and advised Reilly regarding the formation of Element. The address that Reilly listed for Element was Reilly's home address in Eaton, Colorado, and the same address that Garrett used for his own business, TriSpoke Technologies, LLC. Not long after Element's registration, Garrett allegedly paid Reilly $450,000 to acquire an interest in Element.

On October 14, 2016, Reilly, allegedly as part of the scheme to harm Elite, filed a civil lawsuit in the District Court of Weld County, Colorado (the Weld County Action), against Elite, Elite's two subsidiaries, Tixier, Tixier's wife, and Whisenand. In that lawsuit, Reilly alleged, in pertinent part, that Tixier, Tixier's wife, and Whisenand conspired to alter Elite's corporate documents so that Reilly would own only 25% of the total outstanding corporate stock rather than the originally agreed upon 50%. Elite filed counterclaims against Reilly and other third-party defendants,

4

including the same defendants that Elite ultimately named in this action in its amended complaint, for conversion (of tools and equipment owned by Elite), civil theft (of the same tools and equipment), replevin (again of the same tools and equipment), unjust enrichment, constructive trust, aiding and abetting a breach of fiduciary duty, and civil conspiracy.

Garrett allegedly assisted Reilly in a number of ways in carrying out the scheme to harm Elite. This allegedly included (a) providing funding for Element, (b) advising Reilly concerning how to use Element to usurp Elite's business opportunities, (c) advising Reilly to fabricate billing issues with Elite's customers as a means of sabotaging Elite's relationships with its customers, (d) advising Reilly to fabricate a false narrative to Elite's employees and customers that Elite was going out of business and that a receiver was going to be appointed, (e) advising Reilly to fabricate a false narrative that Tixier was stealing from Elite and engaging in other improper acts in order to sabotage Elite's relationships with customers and employees, (f) advising Reilly to fabricate a false narrative that Reilly was a 50% owner of Elite, (g) advising Reilly to fabricate a false narrative that Elite had been dissolved and all of its contacts transferred to Element in order to procure bank financing for Element, (h) advising Reilly to make use of Elite's assets to facilitate the start-up of Element, (i) advising Elite employees about what to say in their exit interviews with Elite before they joined Element, (j) plotting with others to falsely represent their authority to deal with the Internal Revenue Service in order to obtain Elite's tax returns, (k) advising and providing funding for Reilly to file a lawsuit

5

against Elite in an attempt to deplete Elite's resources, and (l) plotting with Reilly and others to bear false witness concerning their own and Reilly's acts and omissions related to the scheme to economically devastate Elite and take over its business.

On December 21, 2018, Reilly filed a second, separate lawsuit in the District Court of Prowers County, Colorado (the Prowers County Action), asserting claims against Tixier, Tixier's wife, and Whisenand. The claims asserted by Reilly were similar in nature to certain of the claims that Reilly had previously asserted in his Weld County Action and that were dismissed by the court overseeing the Weld County Action.

On January 7, 2019, the defendants in the Prowers County Action filed a motion for transfer and consolidation with the Colorado Panel on Consolidated Multidistrict Litigation, seeking to consolidate the Prowers County Action with the Weld County Action based on common issues of fact and law.

*Procedural background*

On January 21, 2019, Elite filed a civil action against Garrett, both individually and in his capacity as trustee of the Ventana Investment Trust, in the District Court of Weld County, Colorado. In its first claim for relief, Elite alleged that Reilly breached his duty of loyalty to Elite by successfully soliciting customers and employees of Elite to join Element, and that Garrett knowingly aided and abetted Reilly's misconduct. In its second claim for relief, Elite alleged that Reilly breached his fiduciary duties to Elite by using Elite's assets to usurp Elite's corporate opportunities and that Garrett aided and abetted Reilly's misconduct. Elite's third

6

claim for relief alleged that Garrett and Reilly intentionally interfered with valid contractual relations between Elite and its customers and employees. Elite's fourth claim for relief alleged that Reilly tortiously interfered with Elite's prospective business advantages with its customers and employees, and that Garrett knowingly aided and abetted Reilly's misconduct. Elite's fifth claim for relief alleged a civil conspiracy between Garrett and Reilly to benefit Reilly and economically devastate Elite. Elite's sixth and final claim for relief alleged that Elite was entitled to the imposition of a constructive trust with respect to Garrett's interests in Element.

On February 22, 2019, Garrett removed the case to the United States District Court for the District of Colorado on the basis of diversity jurisdiction. More specifically, Garrett alleged in his petition for removal that there was complete diversity of citizenship between himself, a California resident, and Elite, a Colorado corporation. Shortly after removal, Garrett moved to dismiss the complaint for lack of personal jurisdiction.

On March 25, 2019, Elite filed an amended complaint. The amended complaint added several new defendants: Reilly; Element; Jhenna Reed (Reilly's wife); Reedesign Concepts, LLC (a company owned by Jhenna Reed); Robert Kubistek (a former Elite employee who allegedly assisted Reilly in breaching Reilly's duties to Elite); and Bond Baiamonte (who allegedly aided and abetted the tortious interference conduct). The amended complaint also added claims for conversion of Elite's property, replevin, and aiding and abetting tortious interference with prospective business advantage.

7

On March 26, 2019, the district court denied Garrett's motion to dismiss as moot due to the filing of the amended complaint. Shortly thereafter, Garrett moved to dismiss the amended complaint for lack of personal jurisdiction.

On May 13, 2019, all of the new defendants, except for Baiamonte, moved to strike the amended complaint or, in the alternative, to dismiss the amended complaint. *Id.* at 276. They argued that, "pursuant to 28 U.S.C. § 1447(e), Elite was required to seek leave to amend" its complaint and, had it done so, the new defendants "would have opposed amendment because all of the factors that the Tenth Circuit applies to the § 1447(e) analysis weigh heavily against Elite's attempted maneuver." *Id.* at 277. Thus, they argued, the district court "should strike Elite's Amended Complaint and order it to seek leave under § 1447(e)." *Id.* "Alternatively," they argued, "the extraordinary circumstances of th[e] case and the parallel state court case warrant[ed] application of the *Colorado River* Doctrine to prevent duplicative litigation and conserve judicial resources," and thus the district court could "elect to dismiss all claims against the" new defendants. *Id.* at 278.

On June 11, 2019, Elite filed a response in opposition to the motion to strike the amended complaint, and also filed its own motion pursuant to 28 U.S.C. § 1447(e) to remand the case to state court. Elite argued in its opposition brief that "[t]he text of 28 U.S.C. § 1447(e), by its terms, does not expressly prohibit [diversity-defeating] amendments as a matter of course under Fed. R. Civ. P. 15(a)." *Id.* at 459-60. Instead, Elite argued, "[i]t [wa]s in the Court's § 1447(e) discretion to address the amendment, joinder, and remand issues" presented by the amended

8

complaint, and that the motion to strike should be denied and Elite's motion to remand to state court should be granted. *Id.* at 460-61. Elite further argued that the motion to strike, "[d]espite mentioning the phrase 'fraudulent joinder[,]' . . . fail[ed] to argue or demonstrate in what manner the joinder of the [new defendants] [wa]s 'fraudulent.'" *Id.* at 464. Indeed, Elite noted, the motion to strike "failed to allege fraud in the pleading of jurisdictional facts," and also "failed to argue the inability of Elite to establish a cause of action against [the new defendants] in state court." *Id.* Lastly, Elite argued that the district court should decline the invited application of the *Colorado River* abstention doctrine "and, instead, exercise its jurisdictional discretion under 28 U.S.C. § 1447(e), and remand the case to State court under the authority of 28 U.S.C. § 1447(c)." *Id.* at 467.

Elite cited the ongoing Weld County Action that had been filed in 2016 by Reilly. Elite noted that it was not until late 2018 that it learned, based upon depositions and related discovery in the Weld County Action, that there was a factual basis for Elite to assert tort claims against Garrett. Elite further noted that on December 21, 2018, it filed in the Weld County Action a notice of intent to join Garrett as a third-party defendant, but that the November 15, 2017 deadline for joining additional parties in the Weld County Action had long passed by the time it discovered Garrett's potential misconduct. Elite asserted that instead of filing in the Weld County Action a motion for leave to join Garrett out-to-time and based on newly discovered evidence, it decided instead to file a separate lawsuit against Garrett in the District Court of Weld County, and then move to consolidate into the

9

Weld County Action. Elite further asserted that it made this decision "in substantial part because of [its] expectation" that the Colorado Panel on Multi-District Litigation "would order the consolidation of the Prowers County Action and Weld County Action, which would necessarily result in the necessity of continuing the then-existing trial date of the Weld County Action." *Id.* at 303. And, Elite noted, the Colorado Panel on Multi-District Litigation ultimately decided, following a hearing on February 8, 2019, that the Prowers County Action should be consolidated with the Weld County Action, and the Chief Justice of the Colorado Supreme Court certified the Panel's order on March 4, 2019. As a result, Elite noted, the judge overseeing the Weld County Action continued the trial date from March 18, 2019, to April 6, 2020.

Elite argued in its motion to remand that it "ha[d] a legitimate interest in avoiding a scenario where it [wa]s forced to try the same case in two different courts against the same aiders and abettors and co-conspirators who were all involved in the same tortious scheme," and that "[t]he defeat of diversity jurisdiction [wa]s an unavoidable consequence of Elite's goal of assuring [that its] claims against Garrett . . . [we]re adjudicated in a single trial with those same claims against" Reilly, Jhenna, Element, Reedesign, Kubistek, and Baiamonte. *Id.* at 306. Elite further argued that Garrett "ha[d] run to federal court in hopes of avoiding being tried together with his brother and the other aiders and abettors and co-conspirators named in the Weld County Action," and was "being represented by the same attorneys who represent[ed] his brother, Reilly, in the Weld County Action." *Id.* at 306–07. Elite argued that Garrett was attempting "to force Elite to litigate the controversy on two

10

battlefields," and that "Elite [wa]s vulnerable to having to proceed to trial in the Weld County Action while incurring a duplication of litigation expenses to try the same case arising out of the same facts in federal court." *Id.* at 307. Elite argued that "[a] single trial for all of the parties . . . [wa]s necessary in order to avoid the potential of inconsistent allocations of fault that could arise were the case to proceed to trials in different courts." *Id.*

Elite also argued in its motion to remand that it had not been dilatory in seeking remand, and it asserted that it would be significantly injured if the case were not remanded and it were forced to litigate the same set of facts and claims in two different forums.

On September 23, 2019, the district court issued an order granting Elite's motion to remand and denying the motion to strike or dismiss the amended complaint. After considering in detail a number of relevant factors, the district court concluded that the amended complaint should not be stricken and, because the amended complaint's addition of the new defendants destroyed subject matter jurisdiction, that the action must be remanded to state court. "Weighing most strongly" in support of its conclusion, the district court noted, were "Elite's high risk of injury and parallel litigation, and the likely conclusion that Reilly . . . [wa]s a necessary party in the claims against Garrett . . . ." Aplt. Br., Ex. A at 17.

The defendants who filed the unsuccessful motion to strike or dismiss the amended complaint filed a timely notice of appeal. Shortly thereafter, Elite moved to dismiss the appeal.

11

Elite argues in its motion to dismiss that this appeal, in which appellants seek to challenge the district court's denial of their motion to strike or dismiss the amended complaint, is expressly barred by 28 U.S.C. § 1447(d). That statute, Elite argues, limits the appeal of remand orders to two very narrow sets of circumstances, neither of which apply here. Elite further argues that "this Court . . . lacks appellate jurisdiction to review the aspect of the district court's order that denied Defendants-Appellants' Motion to Strike the Amended Complaint, or, in the Alternative, to Dismiss." Mot. at 4. Reviewing that aspect of the district court's order, Elite argues, "would permit 'review of the remand order in substance if not in name.'" *Id.* (quoting *Moody v. Great W. Ry. Co.*, 536 F.3d 1158, 1164 n.3 (10th Cir. 2008)).

Appellants argue in response that § 1447(d) "only insulates remand orders pursuant [to] Section 1447(c) from review," and in this case, "the District Court expressly remanded pursuant to Section 1447(e), not Section 1447(c), after finding subject matter jurisdiction was established." Response at 2-3. And "[w]hen it did so," appellants argue, "it abused its discretion by allowing the very jurisdictional manipulation this Court has warned is improper." *Id.* at 3.

Section 1447 of Title 28, entitled "Procedure after removal generally," provides, in relevant part, as follows:

> (a) In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise.

12

\* \* \*

    (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.* An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

    (d) *An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise*, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

    *(e) If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.*

28 U.S.C. § 1447(a), (c)-(e) (emphasis added).[1]

In *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46 (1976), the Supreme Court "held that § 1447(d) should be read *in pari materia* with § 1447(c), so that only remands based on the grounds specified in the latter are

---

[1] Sections 1442 and 1443 of Title 28, which are referenced in § 1447(d), address the removal of two general categories of cases. Section 1442 authorizes the removal of state court actions in which federal officers or agencies are sued or prosecuted. Section 1443, in turn, authorizes the removal of state court actions that are (1) "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof," or (2) "[f]or any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law." 28 U.S.C. § 1443. Neither section applies in this case.

shielded by the bar on review mandated by the former." *Powerex Corp. v. Reliant Energy Serv., Inc.*, 551 U.S. 224, 229 (2007). "At the time of *Thermtron*, § 1447(c) stated in relevant part: 'If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case.'" *Id.* (quoting *Thermtron*, 423 U.S. at 342). Thus, "*Thermtron* limited § 1447(d)'s application to such remands." *Id.*

In 1988, Congress amended § 1447(c) to read as follows:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under [28 U.S.C. §] 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

*Id.* (quoting § 1016(c)(1), 102 Stat. 4670).

"When that version of § 1447(c) was in effect, [the Supreme Court] thus interpreted § 1447(d) to preclude review only of remands for lack of subject-matter jurisdiction and for defects in removal procedure." *Id.* (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12 (1996); *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28 (1995)).

Although Congress has continued to tweak the language of § 1447 over the years, "the Supreme Court thus far has assumed that the changes in the language do not affect the analysis and conclusions in *Thermtron* or the Supreme Court cases following it." *Est. of Cummings v. Cmty. Health Sys., Inc.*, 881 F.3d 793, 802 n.2 (10th Cir. 2018) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009); *Powerex*, 551 U.S. at 229–30).

14

Notably, for purposes of this case, the Supreme Court in *Powerex* rejected the argument that the phrase "subject matter jurisdiction," as employed in § 1447(c), should be "interpreted to cover *only* a defect in subject matter jurisdiction *at the time of removal* that rendered *the removal itself* jurisdictionally improper." 551 U.S. at 230 (quotations omitted; emphasis in original). The Court noted that "[n]othing in the text of § 1447(c) supports the proposition that a remand for lack of subject-matter jurisdiction is not covered so long as the case was properly removed in the first instance." *Id.* The Court further noted that the text of § 1447(e), which was added by Congress in 1988, "unambiguously demonstrates that a case can be properly removed and yet suffer from a failing in *subject-matter jurisdiction* that requires remand." *Id.* at 232 (emphasis in original). The Court thus held "that when a district court remands a properly removed case because it nonetheless lacks subject-matter jurisdiction, the remand is covered by § 1447(c) and thus shielded from review by § 1447(d)." *Id.*

Thus, as the Eleventh Circuit recently explained, "[w]hen § 1447(d) applies," the appellate court "must dismiss the appeal without discussing whether the district court made a mistake." *Thomas v. Phoebe Putney Health Sys.*, 972 F.3d 1195, 1201 (11th Cir. 2020). In other words, "where the order is based on one of the [grounds enumerated in § 1447(c)], review is unavailable no matter how plain the legal error in ordering the remand." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 642 (2006). "This is because '[s]ection 1447(d) reflects Congress's longstanding policy of not permitting interruption of the litigation of the merits of a removed case by prolonged

15

litigation of questions of jurisdiction of the district court to which the cause is removed.'" *Thomas*, 972 F.3d at 1201 (quoting *Powerex*, 551 U.S. at 238).

Appellants argue, however, that § 1447(d) only applies to remand orders issued pursuant to § 1447(c) and not, as here, to remand orders pursuant to § 1447(e). Although we have never addressed this question, every other circuit to do so has rejected the precise argument asserted by appellants. *See DeMartini v. DeMartini*, 964 F.3d 813, 819–20 (9th Cir. 2020); *Fontenot v. Watson Pharm., Inc.*, 718 F.3d 518, 520–21 (5th Cir. 2013); *Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633, 636–37 (6th Cir. 2008); *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007); *In re Fla. Wire & Cable Co.*, 102 F.3d 866, 868–69 (7th Cir. 1996); *Washington Suburban Sanitary Comm'n v. CRS/Sirrine, Inc.*, 917 F.2d 834, 836 n.5 (4th Cir. 1990).

Having carefully examined these decisions, we find them persuasive and adopt their reasoning as our own. In particular, we agree that *Powerex* makes clear that "a loss of subject-matter jurisdiction that occurs *after removal* falls within the specified grounds of § 1447(c), and thus a remand on that basis under § 1447(c) is barred from appellate review by § 1447(d)." *Fontenot*, 718 F.3d at 521 (emphasis in original). Therefore, "if § 1447(d) precludes appellate review of § 1447(c) remand orders for lack of subject matter jurisdiction after removal, then it necessarily precludes appellate review of § 1447(e) remand orders." *Id.* In other words, *Powerex* makes quite clear that "a remand for lack of subject matter jurisdiction under § 1447(e), which," like the case at hand, "arises post-removal, and a remand for lack of subject

16

matter jurisdiction under § 1447(c), which may arise at the time of removal or post-removal, are indistinguishable for purposes of determining whether § 1447(d)'s bar to appellate review applies." *Alvarez*, 508 F.3d at 641.

Notably, appellants do not dispute that the district court's allowance of Elite's amended complaint destroyed the district court's subject matter jurisdiction over the action. Thus, there is no dispute that the district court's characterization of its remand order as "resting upon lack of subject-matter jurisdiction . . . was colorable." *Powerex*, 551 U.S. at 234.

For all of these reasons, we conclude that § 1447(d) bars appellate review of the district court's remand order.

III

Elite's motion to dismiss the appeal for lack of appellate jurisdiction is GRANTED and the appeal is DISMISSED.